**JONES, Collector of Internal Revenue, v. GAYLORD GUERNSEY FARMS.**

No. 2459.

Circuit Court of Appeals, Tenth Circuit.

June 30, 1942.

Warren Wattles, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch, A. F. Prescott, and Arthur L. Jacobs, Sp. Assts. to Atty. Gen., and Charles E. Dierker, U. S. Atty., and George McElroy, Asst. U. S. Atty., both of Oklahoma City, Okl., on the brief), for appellant.

Geo. M. Green, of Oklahoma City, Okl. (Robt. M. Rainey, Streeter B. Flynn, H. M. Peck, and Frank G. Anderson, all of Oklahoma City, Okl., on the brief), for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

The question presented in this appeal is whether the services performed by certain employees of E. K. Gaylord during the years 1936, 1937, 1938 and 1939, were such that they were exempt from the general provisions of the Social Security Act. 42 U.S.C.A. § 301 et seq. E. K. Gaylord, the taxpayer, owned and operated Gaylord Guernsey Farms, consisting of approximately eight hundred acres, near Oklahoma City, Oklahoma. During the years in question he owned a herd of two hundred seventy-five dairy cows, which produced approximately 300 gallons of milk per day. The milk was cooled and bottled on the farm. Part of it was processed into cream, buttermilk and cottage cheese. All of these products were sold to individuals, hotels and grocery stores, both at wholesale and retail, and were delivered by trucks. Nothing was processed save what was produced on the farm, and no other products were marketed or sold. During the time in question, the taxpayer also raised blooded livestock for sale. This stock was exhibited at different fairs. The employees in question consist of two bottlers and coolers, four or more truck drivers, two or more carpenters, two showmen, a bookkeeper, and a stenographer.

The coolers and bottlers lived on the farm. The truck drivers did not live on the farm, but came early in the morning and drove the loaded trucks to the city and sold and delivered the milk products and collected therefor. The carpenters did not live on the farm. Their duties consisted of building and repairing sheds and fences, as well as doing repair work generally. They also did ordinary jobs around the farm when not otherwise engaged. The showmen's work consisted of preparing and conditioning the show cattle for exhibit. All their work, except when at a fair, was done on the farm. The stenographer worked in the taxpayer's office in town and devoted part of her time to work not connected with the farm. Her work in connection with the farm consisted in attending to registration of cattle, answering telephones concerning milk orders, and work of that nature. The bookkeeper kept the records and accounts pertaining to the operation of the farm.

It is claimed, and the court so held, that these employees are exempted from the operation of the act by Section 811(b) (1) and Section 907(c) (1) of the Act, 49 Stat. 620. The two sections are identical, and provide that:

"Section 811. When used in this title [sections 1001 to 1010 of this chapter]—

\* \* \* \* \*

"(b) The term 'employment' means any service, of whatever nature, performed within the United States by an employee for his employer, except—

"(1) Agricultural labor \* \* \*."

The act itself did not define the term "agricultural labor." Regulation 90, promulgated under Title IX of the Social Security Act, defined the term as follows:

"Art. 206(1). Agricultural labor.—The term 'agricultural labor' includes all services performed—

"(a) By an employee, on a farm, in connection with the cultivation of the soil, the harvesting of crops, or the raising, feeding, or management of live stock, bees, and poultry; or

"(b) By an employee in connection with the processing of articles from materials which were produced on a farm; also the packing, packaging, transportation, or marketing of those materials or articles. Such services do not constitute 'agricultural labor,' however, unless they are performed by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced, and unless such processing, packing, packaging, transportation or marketing is carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations.

"As used herein the term 'farm' embraces the farm in the ordinarily accepted sense, and includes stock, dairy, poultry, fruit, and truck farm, plantations, ranches, ranges, and orchards.

"Forestry and lumbering are not included within the exception."

A regulation promulgated by an administrative body charged with the administration of an act is entitled to great weight, and unless contrary to the legislative intent, ought to be upheld. United States v. Stanolind Crude Oil Co., 10 Cir., 113 F.2d 194; Nicholas v. Richlow Mfg. Co., 10 Cir., 126 F.2d 16. The 1939 amend-

ment to the Social Security Act defined "agricultural labor" in substantially the same terms as did Regulation 90 by the Treasury Department. Whether the employees in question are excluded from the act, therefore, is to be determined from an interpretation of Regulation 90.

■ The regulation establishes two factors necessary in determining the scope of the exclusion—the nature of services rendered by an employee, and the dominant purpose of the enterprise in which the employer is engaged. An employee is excluded if he does work on a farm in connection with the cultivation of the soil or the harvesting of crops, or the raising, feeding or management of livestock, bees, or poultry. If an employee is employed in processing materials produced on a farm, he is exempt if the work is done on the farm for the tenant or owner of the farm, and if the operation is an incident to ordinary farming operations, as distinguished from manufacturing or commercial operations.

■■ What constitutes "agricultural labor" within the meaning of the act is not easy of definition. The question is one largely of first impression. The decisions have not charted a clearly defined course by which such question may be determined. It may be generally said, however, that the term "agriculture" has a wide meaning and should not be restrictively interpreted, but should be given a broad enough meaning to embrace agriculture as the term is understood wherever the calling is followed. United States v. Turner Turpentine Co., 5 Cir., 111 F.2d 400; Wayland v. Kleck, Ariz., 112 P.2d 207. In H. Duys & Co. v. Tone, 125 Conn. 300, 5 A.2d 23, 27, a great number of cases were analyzed and considered, and from them the court defined an employee of a farmer as being one "doing work for a farmer which is ordinarily incidental to farming as that operation is generally understood." The court further defines a farm laborer as "one who labors upon a farm in raising crops or in doing general farm work." In the end, the answer must in each case be arrived at by a process of exclusion or inclusion.

■ Gaylord's status as a farmer is challenged. It is contended that he is engaged in a commercial enterprise and not in farming. The facts as to the operation of the farm have already been set forth.

We conclude that his undertaking is not a commercial enterprise within the meaning of the regulation.

■ Repairing fences and buildings is a necessary incident to actual farming operations. Without fences, cattle cannot be raised, and without barns and granaries which will hold the grain, there would be no object in planting or harvesting it. Before the milk and milk products can be sold, the milk must be properly handled. This requires that it be cooled and placed in containers. This work was done by the coolers and the bottlers. Their work is an essential step in dairying. So is also the sale and delivery of the milk. The fact that one sells his milk to the ultimate consumer over a route rather than in bulk does not change the dairy operation as defined in Regulation 90 into a commercial operation. Preparing thoroughbred cattle for sale is an essential incident to the raising, feeding and management of livestock and those who are employed on a farm in such work are excluded from the act. The fact that the work here done by the showmen was on thoroughbred show cattle does not change the nature of the employment. While the showmen performed some work away from the farm at fairs, such work is directly and proximately connected with the marketing of farm livestock so as to bring it within the second section of the regulation.

■■ A somewhat different situation is presented as to the bookkeeper and the stenographer. Not every operation or service in or about a farm is agricultural labor within the ordinarily accepted meaning of the term, and as it is used and understood in the regulation. Every farmer has need of a veterinary. It may be essential or highly desirable, especially during these days of increasing government regulations, for a farmer to employ bookkeepers, accountants, income tax experts, or even attorneys. The regulation implies that the term "farm" as used therein embraces the farm in the ordinarily accepted sense. We ordinarily think of a veterinary, a bookkeeper, an accountant, or a secretary, as one who, through special training, has become skilled in a trade, calling, or profession. Work performed by them for a farmer does not constitute farm labor nor make of them farm laborers as we understand those terms, or as they are used in the act and in the regulation promulgated pursuant thereto.

It is our conclusion that the bottlers and coolers, carpenters, truckmen, and the cattle showmen are exempt from the provisions of the act, but that the bookkeeper and stenographer are subject to its provisions.

Reversed and remanded, with directions to proceed in conformity with the views expressed herein.

BRATTON, Circuit Judge (dissenting in part).

It is my view that all of the employees here in question fall outside the term "agricultural labor," within the meaning of the statute and the regulation promulgated under it, and that the judgment should therefore be reversed and the cause remanded, with directions to dismiss the action in toto.