## LAKE REGION PACKING ASS'N v. UNITED STATES.

No. 11045.

Circuit Court of Appeals, Fifth Circuit.

Dec. 8, 1944.

Counts Johnson, of Tampa, Fla., for appellant.

I. Henry Kutz and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., H. S. Phillips, U. S. Atty., of Tampa, Fla., and Harry G. Taylor, Sp. Atty., Treasury Dept., of Miami, Fla., for appellee.

Before HUTCHESON, HOLMES, and WALLER, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant, a non profit cooperative marketing corporation,[1] brought this suit to recover sums collected from it as social security taxes for the years 1936 to 1939, inclusive. Its claim was that being an agricultural cooperative, which, through its employees performed for its members the labor required to cultivate, pick, haul to market, package, process, and market their fruit, it and its employees were in effect employees of the members, and the work done by them was "agricultural labor" within Secs. 811(b) (1) and 907(c) (1) of the Social Security Act, Secs. 1426(b) (1) and 1607(c) (1), Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, §§ 1426(b) (1), 1607(c) (1); and Treasury Regulations 91, Art. 6 under Title VIII and 90, Art. 206(1) under Title IX of the Social Security Act. It was conceded that in respect of the labor performed for the care and cultivation of the fruit, the taxes had been wrongfully exacted, but it was denied that this was so as to those exacted for the labor of picking, hauling, processing, grading, and otherwise preparing for market and marketing.

The district judge, of the opinion that Fosgate's case, Fosgate Co. v. United States, 5 Cir., 125 F.2d 775 had so decided, took the government's view of the matter. He found that the services of forty employees of the plaintiff in connection with cultivating the groves were agricultural in character and that no taxes were due in respect of them. But he found against the plaintiff in respect of labor employed in (1) picking and placing in field boxes at roadside for hauling to the packing house; (2) hauling the field boxes full to the packing house and empty back; (3) processing, etc. in the packing house in preparation for marketing; and (4) marketing.

Plaintiff has appealed, claiming here, as it did below, a complete exemption because of its cooperative character, and, in the alternative, if its exemption was not complete, that at least it should extend to picking the fruit, placing it in the field boxes and hauling them full to the packing house and empty back to the orchard. In support of its position that as a cooperative concern it is merely the agent of the farmer so that its employees are the employees of the farmer within the meaning of the Social Security Act, it cites no cases. It does, however, cite state cases which, in respect of state laws, ascribe to a cooperative corporation attributes and exemptions not applicable to ordinary corporations for profit, and in the course of the opinion, do speak in a tone giving appellant spiritual, if not practical, that is legal, aid and comfort. Yakima Fruit Growers Ass'n v. Henneford, 182 Wash. 437, 47 P.2d 831, 100 A.L.R. 435; Tobacco Growers' Co-op. Ass'n v. Jones, 185 N.C. 265, 117 S.E. 174, 33 A.L.R. 231; Industrial Commission v. United Fruit Growers Ass'n, 106 Colo. 223, 103 P.2d 15; California E. Comm. v. Butte County Rice Growers Ass'n, Cal.Sup., 146 P.2d 908. In addition it cites many cases

[1] Organized and existing under the Agriculture Cooperative Act of Florida, F. S.A. § 618.01 et seq., with its principal place of business at Tavares, Lake County, Florida, it did the following things for its member stockholders: (a) cared for, cultivated fruit groves, and generally performed the necessary acts of husbandry on their fruit in groves, (b) picked the fruit in their respective groves, placing same in fruit boxes and delivering same at roadside for loading on trucks operating between groves and its packing houses; (c) hauled citrus fruit in field boxes from grove to packing house and returned empty field boxes to grove for further loading; (d) processed, graded, packed and packaged the citrus fruit in the packing house, loaded it in cars for shipment and did other things necessary in preparation for marketing; and (e) marketed their citrus fruit, title to which remained in each grower member until delivered to the marketing agency, and by the latter sold for the account of each grower member of the plaintiff.

which emphasize the difference in purpose and operation between the two kinds of corporations.[2] The United States, on its part, cites cases which give full effect to the fact that though cooperative in aim, the corporation is still a corporation. North Whittier Heights C. Ass'n v. N. L. R. B., 9 Cir., 109 F.2d 76; Maryland & Virginia Milk Producers' Ass'n v. Dist. of Columbia, 73 App.D.C. 399, 119 F.2d 787; and several cases, state, Employment Sec. Comm. v. Arizona C. Growers, Ariz., 144 P.2d 682; Cowiche Growers, Inc. v. Bates, 10 Wash.2d 585, 117 P.2d 624; and, federal, Latimer v. United States, D. C., 52 F.Supp. 228, holding that cooperatives are not, because they are cooperatives, exempted from the act.

Extended discussion of these cases would serve no useful purpose here, for we are in no doubt that the provisions of the Social Security Act apply in the same way to all corporations alike, without distinction between those organized to obtain profits for their stockholders in the ordinary way and those organized to obtain them through cooperation. If Congress had intended to deprive, of the security the act was intended to confer, the employees of corporations which took the cooperative way of obtaining profits for their members by sharing savings rather than the ordinary method of distributing profits, it could, and would, have said so. After all, the stockholders of corporations, whether cooperative or ordinary, intend to, and do, derive advantages from the use by them of the corporate form. It is for Congress, and not for us, to say whether there should be an exemption extended to the one class of corporations and denied to the other. We think it clear that appellant stands exactly in the same case as if it were a corporation organized in the usual way for the distribution of profits to its members, and that the principles laid down by the Fosgate case are controlling here. To the extent, however, that the trial court found and held that the labor, of picking and placing in field boxes for hauling to the packing house, and that of hauling the field boxes to and from the field was not agricultural labor, he did not follow the Fosgate case, and, therefore, erred.[3] The statute exempts agricultural labor. To hold that the cultivation of the fruit was, and its picking, assembling and hauling was not, agricultural labor will not do. The statute contains no such limitation. Neither does the regulation relied on to impose one contain it. It expressly declares that agricultural labor includes both the cultivating and the harvesting of the crops. Indeed, it goes further and holds that picking, packaging, transportation or marketing of farm products is agricultural unless such services were not carried on as an incident to ordinary farm operations as distinguished from ordinary manufacturing and commercial operations. If this packaging, processing, and marketing had been done by the individual farmers, or if without the organization of a corporation and the creation of a business as a result of that organization, the packaging had been done by the individual farmers through persons cooperatively provided and furnished to them as employees, all of the operations here in question would have been exempt. Our holding, however, that a cooperative corporation is no different from an ordinary corporation and the fact established and found that this corporation had an investment of around $200,000.00, and employed 150 to 200 persons, requires an affirmance of so much of the judgment as denied exemption in respect of the labor of packing and marketing. For it is quite clear that here is a case not of packing, processing and marketing as incidental to ordinary farming operations, but one, the essence of which was a commercial operation. Because this is so, those acts, which were not performed in the field or in connection with getting the product from the

2 Tobacco Growers' Co-op. Ass'n v. Jones, 185 N.C. 265, 117 S.E. 174, 33 A.L.R. 231; United States v. Rock Royal Co-op., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446; Liggett Co. v. Lee, 288 U.S. 517, 53 S.Ct. 481, 77 L.Ed. 929, 85 A.L.R. 699; Kansas Wheat Growers Ass'n v. Sedgwick County Com'rs, 119 Kan. 877, 241 P. 466.

3 The opinion in that case denied recovery for picking and hauling, not because these were not agricultural activities when performed for the owner of the field, but because the fruit had been bought on the trees by a commercial concern, and the picking and hauling were there done not as a part of the agricultural enterprize of gathering the fruit and hauling it to market, but as an incident to a commercial business of buying and selling fruit.

field to the place of processing and were therefore not per se agricultural, are deprived of their agricultural character by the dominance in the operation of their commercial character. The judgment was right except as to its denial of refunds for the labor employed in picking and hauling. In that respect it was erroneous. The findings of fact classified the labor done under five subdivisions, (a), (b), (c), (d), and (e). The judgment will be affirmed as to the allowance of recovery in respect of the labor performed under Subd. (a), care and cultivation of the fruit, and, as to the denial in respect of those engaged, under Subd. (d) packing, processing, etc., and (e) marketing. It will be reversed as to the denial of recovery in respect of the labor of those employed under Subd. (b), the picking of the fruit and placing it in field boxes and (c) hauling the field boxes full to the packing house and empty back to the fields, with instructions to ascertain the amount of and allow a refund in respect of, this labor.

HOLMES, Circuit Judge (dissenting in part).

In my opinion, the services of the taxpayer's employees did not constitute agricultural labor, and were not exempted from the Social Security Act. The activities of the taxpayer had advanced beyond the stage of ordinary farming operations, and had become commercial in nature. The size of the packing plant and the utilization, under typical factory conditions, of specialized machinery and personnel, were indicative of the commercial nature of the enterprise, which is separate from the activity of fruit growers. The labor for picking and hauling was not performed by employees of the owner or tenant of the grove. The taxpayer was a separate entity to whom the grove owners had relinquished all control of the picking, packing, and marketing of the fruit. No reason or authority exists for different treatment of a cooperative packing house from that accorded an independent packing house. The employees of both are in need of the protection of the Social Security Act.

I realize that a close question is presented relative to the nature of the picking and hauling services, as contrasted with those performed in processing, packing, and shipping; but the court below found as a fact that such services were incident to the commercial activities of the taxpayer at its packing house, as distinguished from ordinary farming activity. This finding was not clearly erroneous, and should not be disturbed. In this instance, as customarily, the picking, packing, and hauling of fruit was done, not by the growers themselves, but by outside interests.

The growers' contracts with the taxpayers indicated that all parties considered the gathering and transportation of the fruit to the packing house as an integral part of the marketing arrangement. The taxpayer, not the individual growers, determined when the fruit should be picked and how it should be handled and transported. The trucks and equipment were supplied by the taxpayer. From the gathering of the fruit to its sale, the heart of the enterprise was at the packing house.[1] The manager of the taxpayer was asked: "Is it a fair statement to say that the growers of citrus fruit, as a customary practice, either sell the fruit on the trees to independent operators or have a co-operative association come on and pick and pack and ship the fruit?" He replied: "That's definitely the way it is handled, yes sir, in one channel or the other."

I think the judgment appealed from should be affirmed.

[1] Calaf v. Gonzalez, 1 Cir., 127 F.2d 934.