FARMING, Inc. v. MANNING.
Civ. No. 8286.

United States District Court,
D. New Jersey.
May 24, 1954.

Thorn Lord, Trenton, N. J., for plaintiff.

William F. Tompkins, U. S. Atty., (per George J. Rossi, Asst. U. S. Atty., Newark, N. J.), for defendant.

SMITH, District Judge.

This is an action for the recovery of social security and unemployment taxes, assessed and collected under the Federal Insurance Contributions Act and the Federal Unemployment Tax Act, subchapters (A) and (C) of Chapter 9 of the Internal Revenue Code, 26 U.S.C.A. § 1400 et seq., and 26 U.S.C.A. § 1600 et seq. The complaint alleges, and the answer denies, that the taxes were illegally assessed and collected. The action is before the Court on a stipulation of facts, and the only issue presented for determination is one of law.

### Summary of Facts.

#### I.

The plaintiff owned and operated a stock farm at Secaucus, New Jersey. The enterprise was devoted exclusively to the production and sale of pigs, and its dominant purpose was admittedly agricultural. The livestock was fed on kitchen waste obtained from restaurants and institutions located in the metropolitan area of New York City. The waste was collected daily by employees of the plaintiff, pursuant to contracts with the restaurants and institutions.

#### II.

The plaintiff owned and operated thirteen trucks which were used in the daily collection of waste; when not in use these trucks were garaged on the farm premises. The trucks were used on designated routes in the metropolitan area, and each truck was manned by a driver and a helper who were employed exclusively in the collection and transportation of waste. After the waste was delivered at the farm it was handled by livestock feeders. The drivers and their helpers performed no duties other than those described; they performed no work on the farm.

#### III.

The plaintiff, apparently prompted by some doubt as to the status of the said employees and its tax liability under the said Acts, requested an administrative determination. The Deputy Commissioner of Internal Revenue, after a consideration of the information furnished by the plaintiff, advised the Collector of Internal Revenue, the defendant herein, as follows: "Services performed by employees of a corporation in collecting garbage do not constitute 'agricultural labor' for Federal employment tax purposes." (See exhibit H annexed to the stipulation of facts).

#### IV.

The Commissioner of Internal Revenue determined the tax liability of the plaintiff under the Federal Insurance Contributions Act for the period October 1, 1939 to March 31, 1944, inclusive, and under the Federal Unemployment Tax Act for the calendar years 1940 to 1943, inclusive. The taxes were assessed pursuant to the applicable provisions of the Internal Revenue Code, and thereafter tax returns were filed by the plaintiff. The taxes were paid to the Collector of Internal Revenue, the defendant herein, under protest.

#### V.

Thereafter, on April 3, 1945, the plaintiff filed timely claims for refund. These claims were disallowed and the present action followed their disallowance.

### Discussion.

The defendant concedes that the plaintiff was not liable for the excise taxes imposed by Sections 1410 and 1600 of the Acts, 26 U.S.C.A. 1410 and 1600, if, as

the plaintiff contends, the services performed by these employees were "agricultural labor." The only question presented for determination is whether or not the services performed by the drivers and their helpers were "agricultural labor" within the meaning of the said Acts.

The answer depends upon the interpretation of the statutory definition contained in Sections 1426(h) and 1607(*l*) of the Act, 26 U.S.C.A. 1426(h) and 1607 (*l*). The term is therein defined as follows:

"The term 'agricultural labor' includes all services performed—

"(1) *on a farm*, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, *including the raising, shearing, feeding, caring for, training, and management of livestock*, * * *." (Emphasis by the Court.)

The employers of "agricultural labor" as thus defined, are admittedly exempt from taxation under the express provisions of the Acts.

The quoted subsection, like the tax sections contained in subchapters (A) and (C) of Chapter 9 of the Internal Revenue Code, supra, implements the Social Security Act as amended and therefore must be so construed as to effectuate the obvious purposes of the latter Act. This legislation established a comprehensive plan to protect the wage earner against the economic consequences of unemployment and the insecurity of old age. It was "the result of long consideration by the President and Congress of the evil of the burdens that rest upon large numbers of our people because of the insecurities of modern life, particularly old age and unemployment. It was enacted in an effort to coordinate the forces of government and industry for solving the problems. The principal method adopted by Congress to advance its purposes was to provide for periodic payments in the nature of annuities to the elderly and compensation to workers during periods of unemployment. Employment taxes, * * *, are necessary to produce the revenue for federal participation in the program of alleviation." United States v. Silk, 331 U.S. 704, 710, 67 S.Ct. 1463, 1466, 91 L.Ed. 1757. See also the cases therein cited.

■ The legislation excludes from coverage only the classes of workers therein defined, and consistent therewith exempts their employers from the tax liability imposed by Sections 1410 and 1600 of the Internal Revenue Code, supra. "Administrative considerations may explain several exemptions. Relatively great expense and inconvenience of collection may justify the exemption from taxation of domestic employers, farmers, and family business, not likely to maintain adequate employment records, which are an important aid in the collection and verification of the tax." Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 513, 57 S.Ct. 868, 874, 81 L.Ed. 1245. However, the statutory exemptions accorded the employers under the Internal Revenue Code are consistent with the exceptions to coverage contained in the Social Security Act; the respective provisions are in pari materia and therefore should be construed together.

■ The legislation, considered in its entirety, as it must be, is remedial in nature and therefore must be liberally construed to effectuate its obvious purposes. This rule of construction is not applicable, however, to the exemptions and exceptions. The specific exemptions contained in the tax sections, supra, like the exceptions to coverage contained in the remedial provisions of the Social Security Act, must be strictly construed. Accord: Phillips, Inc., v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095; Miller Hatcheries v. Boyer, 8 Cir., 131 F.2d 283, 285–286; Calaf v. Gonzalez, 1 Cir., 127 F.2d 934, 937; Bowie v. Gonzalez, 1 Cir., 117 F.2d 11, 16. The respective provisions of the Acts were intended to be consistent and harmonious.

It has been held that "a realistic approach to the social and economic security of employees in present-day large scale enterprises of all kinds requires that all doubt in construing remedial statutes providing unemployment insurance and old age protection and containing tax impositions should favor coverage rather than exemption." Latimer v. United States, D.C., 52 F.Supp. 228, 234; Ewing v. McLean, 9 Cir., 189 F.2d 887, 892.

█ The tax sections, subchapters (A) and (C) of Chapter 9 of the Internal Revenue Code, supra, exempts from liability the employers of "agricultural labor" as defined in Sections 1426(h) and 1607($l$), supra. The right to the exemption is dependent not only upon the dominant purpose of the enterprise but also upon *The Nature of the Services Performed by the Employees.* Accord: Jones v. Gaylord Guernsey Farms, 10 Cir., 128 F.2d 1008, 1011; Stuart v. Kleck, 9 Cir., 129 F.2d 400, 402, 403; Burger v. Social Security Board, D.C., 66 F.Supp. 619, 622, 623, affirmed sub nomine, Miller v. Burger, 9 Cir., 161 F.2d 992. The statutory definition includes as "agricultural labor" only the *"Services Performed on a farm".* Ibid. The exemption is restricted by the definition, the language of which is most persuasive as to the legislative intent. (Emphasis by the Court).

█ The services performed by the truckers and their helpers were not "agricultural labor" within the definition as thus construed. They were employed solely in the collection and transportation of kitchen waste and none of their work was performed *"On the Farm."* (See summary of facts). The plaintiff's claim to the statutory exemption must, therefore, fail.

### Conclusion.

The excise taxes were legally assessed and collected under subchapters (A) and (C) of Chapter 9 of the Internal Revenue Code, supra. A judgment in favor of the defendant and against the plaintiff may therefore be entered.