FARMING, Inc., Appellant,

v.

John E. MANNING, Collector of Internal Revenue.

No. 11408.

United States Court of Appeals, Third Circuit.

Argued Feb. 9, 1955.

Decided March 2, 1955.

Thorn Lord, Trenton, N. J., for appellant.

I. Henry Kutz, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Clarence J. Nickman, Special Assts. to the Atty. Gen., Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves a suit to recover certain Social Security and unemployment taxes paid by the defendant to the Collector of Internal Revenue.[1] There is only one question in the case. If the work which certain employees did for the plaintiff consisted of "agricultural labor," the plaintiff is entitled to have his money back because agricultural labor is exempt from the coverage of the statutes involved. The district court found these employees not within the exemption and entered judgment for the defendant. D.C.N.J.1954, 121 F.Supp. 252.

The facts are simple and were stipulated. Plaintiff raises hogs on a piece of land near Secaucus, New Jersey. It

---

1. The taxes were paid pursuant to the Federal Insurance Contributions Act, 53 Stat. 175, as amended, 53 Stat. 1381 (1939), 26 U.S.C.A. § 1400 et seq., for the period October 18, 1939 through March 31, 1944, and the Federal Unemployment Tax Act, 53 Stat. 183, as amended, 53 Stat. 1387 (1939), 26 U.S.C.A. § 1600 et seq., for the years 1940 through 1943.

is engaged in farming. This is agreed upon. The plaintiff employs twenty-six men who operate thirteen trucks for it in the operation about to be described. These men pick up table and kitchen garbage from establishments in New York with whom the plaintiff has a contract for collection. The Waldorf-Astoria leads the list. Whether the majority of this material, crumbs from the rich man's table, comes from equally well selected cuisines does not appear. At any rate the garbage is collected by these drivers and helpers, transported in trucks over to New Jersey and taken to the plaintiff's farm. But the drivers and their helpers do not feed the pigs. That is done by other employees. The trucks remain standing on the plaintiff's premises between trips.

On these facts are the employees just described engaged in agricultural labor so as to bring them outside the coverage of the statutes?

To get the answer here we first turn to the wording of the definition of agricultural labor contained in the statutes. The relevant parts for us and the only relevant parts, are 53 Stat. 1386, 26 U.S.C.A. § 1426(h) (1) and 53 Stat. 1396, 26 U.S.C.A. § 1607(l) (1), which provide in identical language:

"Agricultural labor. The term 'agricultural labor' includes all services performed—

"(1) On a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and fur-bearing animals and wild life."

The plaintiff's first argument is that the phrase "on a farm" does not apply to all the paragraph. He says so to apply it is not only awkward but contradicts the last clause of the paragraph. We do not see any contradiction. Fur-bearing animals, as well as meat-bearing animals, are raised on farms. Advertisements to prospective chinchilla raisers even suggest they may be raised in an otherwise vacant room in one's house. Whether minks raised in captivity are "wild life" or not we do not know. Certainly they are "fur-bearing animals." We see no reason for not applying the phrase "on a farm" to everything which comes subsequently in this paragraph number (1).

The next argument is that these workers really are performing their services "on a farm" because the ultimate object of their journey around the pavements of New York is not to relieve the eating establishments of their garbage but to deliver it for consumption by the hogs at the plaintiff's farm. Since the object for which the men are employed is delivery of this swill to the farm, it is argued that the services performed by the employees are performed on a farm. This argument proves too much. Plaintiff would hardly suggest that if a farmer ordered a package from a store in Newark to come to him by parcel post that the post man was doing work "on a farm" when he delivered the package. So, too, if the plaintiff bought material like swill buckets at a New York store to use on his farm but had to pay a trucker to bring them out, surely he would not contend that the trucker was engaged in agricultural labor when the goods were delivered at the plaintiff's door. Suppose that instead of owning trucks and hiring drivers itself, the plaintiff had employed a trucking firm in Secaucus to go to New York, collect the garbage, and deliver it to plaintiff's farm in Secaucus. It would not be seriously contended, we think, that the employees of the trucking firm doing this work were engaged in the agricultural labor. Yet the services are the same. Of course, there is something done on a farm when a package or any other item is delivered there. But not enough to entitle us to say that the employees' services are performed, on a farm, within the statute.

782

■ Plaintiff also points out, in his very thorough argument, that the language quoted above which defines agricultural labor does not pretend to be exclusive, but rather inclusive in the sense of outlining specific things which are agricultural labor but leaving the possibility of other things being included if the facts so indicate. We are not inclined to reject this argument because we think there is sense to it and we do not think it is answered by the legal cliché *expressio unius est exclusio alterius.*

■ But suppose we look at the situation outside the expressed inclusions of the statute. Are these men performing agricultural services? They are members of a union, and not an agricultural union either, if there is one. As of the years involved in this lawsuit the union was an affiliate of United Mine Workers of America known as United Construction Workers, Local 113. The men had a forty-hour week contract which provided for time and a half for overtime work. We think it would be a very great surprise to these truck drivers if they were told they were performing agricultural labor; almost as much as if a driver taking an interstate truck load of poultry feed from a Pennsylvania mill to lower Delaware would be surprised to learn that he was performing agricultural labor. Of course it is not everything that has to do with farming which is agricultural labor and cases which have talked this problem in other situations bring out the contrast nicely. See, for example, In re Boyer, 1917, 65 Ind.App. 408, 117 N.E. 507; Latimer v. United States, D.C.S.D.Cal.1943, 52 F. Supp. 228; Lake Region Packing Ass'n v. United States, 5 Cir., 1944, 146 F.2d 157; Batt v. United States, 9 Cir., 1945, 151 F.2d 949. To the extent that Halletz v. Wiseman, 1920, 193 App.Div. 4, 183

N.Y.S. 112, is opposed to this view, we cannot go along with it.

Finally, there is this comment to be made with regard to the nature of these statutes. These are not penal statutes nor are they, except incidentally, revenue statutes. They are to be classed under the broad, though indefinite, heading of social legislation. The classes of workers to be covered by this legislation are very broad. The exemptions are, in general, rather narrow and become more so as the scope of this legislation is widened from time to time.[2] We think that courts should not be eager to extend the scope of the exceptions by artificial construction of language broadening them beyond what Congress has prescribed.

The judgment of the district court will be affirmed.

---

2. It is interesting to note that while the 1950 amendments retain the basic definition of agricultural labor, 64 Stat. 532 (1950), 26 U.S.C.A. § 1426(h) (1), they limit the exemption, with qualifications not material here, to those whose remuneration is less than $50.00 in any calendar quarter. 64 Stat. 528 (1950), 26 U.S.C.A. § 1426(b) (1) (A). The 1950 amendments contain other provisions which broaden the coverage of the Acts.